640 S.E.2d 113

**Patty KALANY and Robert Kalany, Plaintiffs Below, Appellees,**

v.

**Herman CAMPBELL, Individually and D/B/A Irene's Bar, Defendant Below, Appellant.**

**No. 33078.**

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 4, 2006.

Decided: Nov. 16, 2006.

Concurring and Dissenting Opinion of Justice Starcher Nov. 30, 2006.

---

**52**

David L. Wyant, Christopher M. Elswick, Bailey & Wyant, PLLC, Wheeling, for the Appellant.

Ronald Wm. Kasserman, Kasserman & Bowman, PLLC, Wheeling, for the Appellees.

ALBRIGHT, Justice.

Appellant Herman Campbell appeals from the denial of his post-verdict motion for judgment as a matter of law with regard to a common law retaliatory discharge claim filed against him in connection with his operation of a business known as Irene's Bar. In addition, Appellant contends that the trial court erred in awarding costs and fees to Appellees Patty and Robert Kalany under the West Virginia Human Rights Act (the "Act")[1] in view of the circuit court's ruling that, based on the number of employees Mr. Campbell employed at Irene's Bar,[2] the Act was inapplicable. Upon our studied review of this matter, we conclude that the trial court did

---

**1.** *See* W.Va.Code §§ 5–11–1 to –21 (Repl.Vol. 2006).

**2.** Qualification as an "employer" within the meaning of the Act requires the employment of twelve or more persons for twenty or more calendar weeks. *See* W.Va.Code § 5–11–3(d) (1998) (Repl.Vol.2006).

not commit error by refusing to grant Appellant's motion for judgment as a matter of law on the retaliatory discharge claim, but we do find error with regard to the award of attorney's fees and costs. Accordingly, the decision of the Circuit Court of Ohio County is affirmed in part and reversed in part.

## I. Factual and Procedural Background

Mrs. Kalany averred that during her shift at Irene's Bar on November 27, 2001, where she was employed as a part-time waitress and bartender, Appellant grabbed her against her will and kissed her on the lips. Mrs. Kalany claims she told Appellant to stop it and not to do it again. On the date of the alleged kiss, Mrs. Kalany completed her shift by working for several more hours and then left the bar with her husband. Mrs. Kalany told her husband about the alleged kiss later that night and continued to work at Irene's Bar for the remainder of the week.

On December 1, 2001, Mr. Kalany went to Irene's Bar to discuss the alleged kiss with Mr. Campbell. After a discussion about the incident,[3] the two men purportedly shook hands and Mr. Kalany left the bar. Appellant informed Mrs. Kalany on December 6, 2001, that he was laying her off so that he could train a new employee. After this date, Mrs. Kalany was never placed on the work schedule for Irene's Bar. At trial, Mr. Campbell explained that he decided to "permanently" lay off Mrs. Kalany after Mr. Kalany visited him and raised the alleged kissing incident. Mr. Campbell testified that this employment decision was based partly on Mrs. Kalany's poor work performance and partly because of the false allegations she made against him.

On June 24, 2002, the Kalanys filed a complaint[4] against Appellant in the Circuit Court of Ohio County through which they asserted causes of action for discrimination in the form of hostile work environment and retaliatory discharge in violation of the Act; intentional infliction of emotional distress; common law sexual harassment; common

law retaliatory discharge; battery; and a loss of consortium as to Mr. Kalany. The trial of this matter commenced on March 10, 2005, and at the close of Appellees' case in chief, Mr. Campbell moved for judgment as a matter of law on all of the claims asserted. After determining that Mr. Campbell did not meet the definition of an "employer"[5] under the Act because he employed less than twelve employees, the trial court determined that the Act was inapplicable and, accordingly, granted Appellant's motion for judgment as a matter of law on Appellees' statutory claims of sexual discrimination and retaliatory discharge. The trial court also granted judgment as a matter of law to Appellant on the claims of intentional infliction of emotional distress and loss of consortium.

The trial court submitted Appellees' common law claims of sexual harassment and retaliatory discharge as well as the battery claim to the jury. Upon its consideration of the evidence, the jury found that Appellees had failed to prove a claim grounded in common law sexual harassment or a battery claim. The jury did, however, find that Mrs. Kalany was discharged in retaliation for making a sexual harassment complaint. The jury awarded Mrs. Kalany $7,824 for past lost wages and the trial court awarded an additional $2,539 in prejudgment interest.

Appellant filed a post-verdict motion for judgment as a matter of law through which Mr. Campbell argued that the verdict was not supported by the evidence and was contrary to law. On April 7, 2005, Appellees filed a motion for attorney's fees and costs based on the jury award of damages for the common law retaliatory discharge claim. The trial court denied Appellant's renewed motion for judgment as a matter of law by its ruling of August 3, 2005, and awarded Appellees $57,332.50 in attorney's fees and $2,762.56 in costs by order entered on November 15, 2005. To support its award of attorney's fees, the trial court reasoned that Mr. Campbell was a "person" subject to the

---

**3.** Appellant testified that he told Mr. Kalany that the alleged kiss never took place.

**4.** An amended complaint was filed on March 6, 2003.

**5.** *See* W.Va.Code § 5–11–3(d).

Act and that such fees were allowable against him in connection with "his reprisal against Patty Kalany for reporting the kiss to her husband." Through this appeal, Appellant seeks a reversal of the trial court's decision to deny his post-verdict motion for judgment as a matter of law on the common law retaliatory discharge claim and a reversal of the award of attorney's fees and costs under the Act.

## II. Standard of Review

■ Our review of the trial court's ruling on the judgment as a matter of law motion is *de novo*. *See Gillingham v. Stephenson*, 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001) (recognizing applicability of plenary review for pre- or post-verdict rulings on judgment as matter of law). With regard to the propriety of an award of attorney's fees under the statute, our review is similarly plenary. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review"). With these standards in mind, we proceed to determine whether the circuit court committed error.

## III. Discussion

### A. Retaliatory Discharge

■ Appellant maintains that the trial court erred in denying his post-verdict motion for judgment as a matter of law on the common law retaliatory discharge claim. Mr. Campbell asserts that because the jury concluded there was no common law sexual harassment, as demonstrated by their answer to special interrogatory number two,[6] the predicate basis for a retaliatory discharge claim was missing. Consequently, Appellant argues that the jury's finding of retaliatory discharge is inconsistent with their finding of no sexual harassment and cannot stand as a matter of law.

■ To support his theory, Appellant recognizes the public policy basis for allowing a

common law retaliatory discharge claim. In syllabus point eight of *Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997), this Court held:

> Even though a discharged at-will employee has no statutory claim for retaliatory discharge under *W.Va.Code*, 5–11–9(7)(C) [1992] of the West Virginia Human Rights Act because his or her former employer was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed, as required by *W.Va.Code*, 5–11–3(d) [1994], the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.*

Appellant reasons that absent a finding of common law sexual harassment or sexual discrimination, there can be no common law retaliatory discharge claim as the public policy basis for allowing such a claim is nonexistent in such cases.

■■ Where Appellant goes astray is to suggest that only by proving a sexual harassment claim could Appellees establish the requisite public policy violation under the facts of this case. In so arguing, Mr. Campbell overlooks this Court's recognition that it is against the public policy of this state for an employer to "retaliat[e] against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." Syl. Pt. 11, in part, *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741 (1995); *accord Williamson*, 200 W.Va. at 430, 490 S.E.2d at 32 (recognizing that "[t]he West Virginia Human Rights Act establishes a clear and unequivocal public policy against sex discrimination in employment and retaliatory discharge based thereon"). The alleged act of sexual harass-

---

**6.** That interrogatory posed the following question: "Do you find that Patty Kalany has proven by a preponderance of the evidence that she was

discharged by Herman Campbell in retaliation of her complaint of sexual harassment?"

ment—the unwelcome and forced kiss—clearly qualifies as a practice that is in violation of the provisions of the Act. *See* W.Va. Code § 5–11–9–(7)(C). The record of this case supports Appellees' position that Mrs. Kalany told her husband about the alleged kiss; that Mr. Kalany discussed the incident with Mr. Campbell; and that following Mr. Kalany's meeting with Mr. Campbell about the alleged incident, Mrs. Kalany was never placed on the work schedule at Irene's Bar.

This Court has previously explained at length the rationale for encouraging individuals to report incidents of suspected sexual harassment even before the time when such conduct becomes actionable:

> The legislative purpose in including the antiretaliation provision was obviously to encourage people to come forward and expose unlawful employment practices and to do so without fear of reprisal. By protecting reasonable, good faith opposition, the provision also advances the statutory purpose of ending discrimination by engaging private citizens to help serve as "private attorneys general." An absence of such protection would create a chilling effect on employees' willingness to join the fight. The overriding purposes of W.Va.Code, 5–11–9(7)(C), would be wholly defeated if its protection applied only to those individuals who confidently know the technical area of fair employment law and who correctly predict how its doctrine will ultimately be applied in a court of law. Given those unpredictable variables, few rational employees would take much solace in the protection from retaliation offered by such a narrow construction of W.Va.Code, 5–11–9(7)(C).
>
> This case illustrates another example supporting the prevailing federal view, that is, in hostile environment harassment cases (sexual, racial, or whatever), the offensive conduct often does not rise to the level of actionability until after there has been a significant accumulation of incidents. Both employees and employers would benefit from a standard that encourages harassed

employees to come forward early, well before the ephemeral line of legal liability has been crossed, in order to root out the problem before it grows into an unmanageable and costly crisis. *See generally* Syl. pt. 2, in part, *Curry v. Gatson,* 180 W.Va. 272, 376 S.E.2d 166 (1988) ("if an employee is sexually or racially harassed at the workplace and this discriminatory treatment would cause a reasonably prudent person to resign, such employee is not disqualified from receiving unemployment compensation benefits").

*Hanlon,* 195 W.Va. at 112, 464 S.E.2d at 754.

Recently this Court addressed the very issue raised here—whether a reprisal claim can exist independent of a sexual harassment claim. In *Akers v. Cabell Huntington Hospital, Inc.,* 215 W.Va. 346, 599 S.E.2d 769 (2004), the trial court, in granting a directed verdict on a sexual harassment claim, presumed that "if there was no sexual harassment, there could be no reprisal."[7] *Id.* at 356, 599 S.E.2d at 779. Refuting this presumption, we expounded:

> The law is clear that a reprisal claim can stand on its own without actionable sexual harassment. By this, we mean that in those cases where a plaintiff cannot prove that he/she was the subject of sexual harassment, the law nonetheless permits that individual to prove that his/her employer took improper employment-related action against him/her based solely on the reporting of the alleged sexual harassment. Thus, even if the trial court had properly ruled against Appellant on the sexual harassment claim, she was entitled, assuming the demonstration of a *prima facie* case of reprisal, to have proceeded to the jury for a determination of whether the Hospital took retaliatory action against her based on her reporting of the alleged sexual harassment.

*Akers,* 215 W.Va. at 357, 599 S.E.2d at 780.

■ The public policy concerns that supported a claim for common law retaliatory

---

**7.** Because the trial court did not address the reprisal claim in its ruling granting a directed verdict on the sexual harassment claim, we observed that the trial court must have assumed that the absence of a provable sexual harassment claim negated the viability of plaintiff's reprisal claim. *Akers,* 215 W.Va. at 356, 599 S.E.2d at 779.

discharge in this case were twofold: (1) sexual harassment is in violation of the public policy of this State; and (2) an action of reprisal taken against an individual who reports an instance of alleged sexual harassment is in violation of the public policy of this State. Appellant is simply mistaken in suggesting that the predicate public policy violation necessary to proceed on a common law retaliatory claim under the holding of *Williamson* is lacking in this case. *See* 200 W.Va. at 423, 490 S.E.2d at 25, at syl. pt. 8. As we previously articulated in *Akers*, "in those cases where a plaintiff cannot prove that he/she was the subject of sexual harassment, the law nonetheless permits that individual to prove that his/her employer took improper employment-related action against him/her based solely on the reporting of the alleged sexual harassment." 215 W.Va. at 357, 599 S.E.2d at 780. Provided that a plaintiff has made out a *prima facie* case of reprisal (here the permanent layoff following the reporting of the alleged sexual harassment), a jury is entitled to decide whether an employer took retaliatory action against an employee based on the reporting of the alleged sexual harassment. That is exactly what the jury decided in this case. Even though they apparently did not believe that Mrs. Kalany proved that the kissing incident took place, they did believe that Mr. Campbell took retaliatory action against her for the reporting of the alleged kissing incident.

■ While we appreciate Appellant's contention that the law should not provide relief to an employee who does not prove the underlying act of sexual harassment occurred,[8] sexual harassment cases are often inherently difficult to prove because of the "he said/she said" nature of the case. In recognition of this difficulty of proof, a claim for retaliatory discharge does not require proof of the underlying claim of sexual harassment or discrimination. *See Akers,* 215 W.Va. at 357, 599 S.E.2d at 780; *see* Syl. Pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986) (setting forth elements of reprisal claim). We wish to emphasize that we are not sanctioning relief being awarded to a complainant who, as Appellant maintains, has falsely charged her employer with an act of sexual harassment. The record in this case contains no finding by the jury that the alleged kiss did not take place. And, while Appellant presumes the jury reached this conclusion based on the jury's negative response to special interrogatory number two,[9] this Court cannot operate on presumptions in reviewing a case for reversible error.

■ Having rejected Appellant's argument that the predicate public policy basis for the assertion of a common law retaliatory discharge claim was absent in this case,[10] we find no error in the trial court's decision to deny Mr. Campbell's post-verdict motion for judgment as a matter of law on the common law retaliatory discharge claim.

## B. Attorney's Fees and Costs

■ With limited explanation for its decision, the trial court awarded attorney's fees and costs to Appellees by relying on the statutory provision which provides for such awards in connection with actions that are instituted under the Act. *See* W.Va.Code

8. Appellant is correct in arguing that it is not a violation of public policy to discharge an employee for making false accusations about physical contact between an employer and an employee. The record in this case, however, contains no finding that the jury reached the conclusion that Mrs. Kalaney was lying about the alleged kiss.

9. *See supra* note 6.

10. This case demonstrates the need for carefully crafted interrogatories and/or additional instructions to educate the jury that the protected activity complained about must be in violation of an express public policy. Appellant suggests that the jury did not fully comprehend the elements of a retaliatory discharge action. While this may be true, given the joint submission of the verdict form used by the jury, any error with regard to the form and the special interrogatories is invited error (Appellant concedes in his reply brief that special interrogatory no. two was "ambiguous"). *See* Syl. Pt. 1, *Maples v. W.Va. Dept. of Commerce,* 197 W.Va. 318, 475 S.E.2d 410 (1996) ("A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal"). If the jury wrongly believed that a common law claim of retaliatory discharge could have been established by the mere reporting of an alleged protected activity without accompanying evidence of an attendant public policy violation, any such misapprehension resulted from invited error and is, therefore, not the proper subject of appellate review. *See id.*

§ 5–11–13(c). Before making the award, the trial court identified the statutory language that makes a reprisal an "unlawful discriminatory practice"[11] and then referenced the statutory language which provides that "*[i]n actions brought under this section*, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant." W.Va.Code § 5–11–13(c) (emphasis supplied).

To come within the provisions of the Act for purposes of a fee award, the trial court reasoned "that Herman Campbell is a 'person' subject to the West Virginia Human Rights Act."[12] Having deemed Appellant a "person" for purposes of the Act's provisions, the trial court proceeded to award attorney's fees and costs against him "as a statutory 'person', for his reprisal against Patty Kalany for reporting the kiss to her husband, pursuant to W.Va.Code § 5–11–9 and § 5–11–3."

Appellant argues that given the trial court's initial determination of the Act's inapplicability based on Mr. Campbell's failure to meet the statutory definition of an "employer," its subsequent conclusion that Mr. Campbell fell within the Act's definition of a "person" is simply "absurd, unjust and unreasonable."[13] Appellees respond by suggesting that the same rationale for awarding fees and costs under the statutory scheme should apply equally to a common law claim for retaliatory discharge predicated on unlawful sexual harassment. Appellees cite this Court's recognition in *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989) that:

The goal of the West Virginia human rights law is to protect the most basic, cherished rights and liberties of the citizens of West Virginia. Effective enforcement of the human rights law depends upon the action of private citizens who, from our observations of these matters, usually lack the resources to retain the legal counsel necessary to vindicate their rights. Full enforcement of the civil rights act requires adequate fee awards.

*Id.* at 80, 380 S.E.2d at 247.

While we appreciate Appellees' attempt to extend the statutory award of fees and costs to common law actions based on the theory that the same underlying public policy rationale that seeks to encourage the prosecution of actions instituted under the Act should also apply to actions brought outside of the Act, the law does not permit us to make such an extension. Clearly, the trial court was reaching in trying to bring Mr. Campbell within the parameters of the Act by characterizing him as "person" subject to the Act's provisions. That Mr. Campbell was the employer of Mrs. Kalany cannot seriously be disputed. And, despite the protestations offered by Appellees, there is a rational basis for enacting state and federal legislation which addresses prohibited discriminatory conduct in a manner that does not apply to employers whose business interests do not require the use of more than a minimal number of employees.[14] *See Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 174 (4th Cir.2000) (observing that legislative "line drawing" is inherent to lawmaking and

---

**11.** *See* W.Va.Code § 5–11–9(7)(A).

**12.** Under the Act, a "person" is defined as: "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W.Va.Code § 5–11–3(a).

**13.** Appellant argues that this ruling defies the rule of statutory construction that counsels against statutory nullity. Specifically, Appellant suggests that if the statutory definition of "person" was intended to broadly encompass all individuals, then the Act's separate reference to acts of discrimination committed by "any person, employer, . . ." would have no meaning and thereby nullify all significance to the numerous terms

that follow the word "person" in West Virginia Code § 5–11–9(7). We agree.

**14.** Those legitimate policy reasons include the desire to encourage small businesses and to protect such small entrepreneurs from the associated costs of complying with discrimination laws and defending against claims brought under such legislation. We reject without discussion Appellees' suggestion that to deny an award of attorney's fees under the Act to individuals working for employers who employ less than twelve individuals is an equal protection violation. *See Thomas v. Rutledge*, 167 W.Va. 487, 493–94, 280 S.E.2d 123, 127 (1981) (stating that "[i]n the area of . . . economics benefits legislation . . . a classification which is not inherently suspect will satisfy the guarantee of equal protection of the

recognizing that rational-basis review requires only that line must be drawn "in a manner that reasonably furthers the legislative concern" at issue); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993) (recognizing that "Congress did not want to burden small entities with the costs associated with litigating discrimination claims").

▪ The trial court was acting outside of the statutory authority extended by the Legislature in making an award of attorney's fees and costs under the Act in connection with a common law claim of retaliatory discharge.[15] Mr. Campbell, as an employer who does not come within the protections of the Act based on the minimal number of employees he hires, cannot be deemed a statutory "person" for purposes of relying on the Act's authority to make an award of fees and costs at the discretion of the trial court. Accordingly, we reverse the award of attorney's fees and costs, finding no statutory authority for the award.

Based on the foregoing, we affirm the decision of the Circuit Court of Ohio County with regard to its denial of Appellant's post-verdict motion for judgment as a matter of law on the common law retaliatory discharge claim, but reverse the trial court's decision to award attorney's fees and costs to Appellees in connection with their recovery of damages for their claim of common law retaliatory discharge.

Affirmed, in part; Reversed, in part.

STARCHER, J., concurring, in part, and dissenting, in part.

#### I. The Retaliation Claim

I concur with the majority opinion's application of Syllabus Point 8 of *Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997). Retaliation or reprisal for filing a sexual harassment claim is actionable.

The majority properly points to the inherent difficulties in the proof of sexual harassment itself as one reason that a separate retaliation claim can be maintained without conclusive proof of the underlying harassment. Additionally, it should be noted that the law wants to encourage people to file claims *without fear of reprisal* for the act of filing itself.

If the rule were any different, an employer's lawyer could advise, "It's probably safe to fire a complaining employee if it appears they have little corroborating proof of the harassment." Whereas, the message that the law *wants* employers' lawyers to deliver is: "If someone makes a complaint about sexual harassment, don't fire them for making the claim—even if you think the claim cannot be easily proved."

It's not as "easy" to be an employer as it once was. Under modern employment discrimination law, employers must follow a number of "non-intuitive" rules about when they can and can't fire people. Behavior that was once normal or tolerated is now intolerable. Employment discrimination lawsuits are at best a blunt and imprecise instrument to change behavior. But they are working, and are an important part of changing the workplace for the better.

#### II. Attorney Fees

I disagree with the majority opinion's statement that the "law does not permit us to make such an extension"—to allow the possibility of a fee award in common-law sexual harassment retaliation claims.

Of course the law "permits" such an extension. There is no statutory or constitutional obstacle to such an extension; common-law sexual harassment retaliation is by definition a common-law cause of action, where courts establish the elements of the action and the available remedies.

The fact that the Legislature has exempted certain employers from statutory human rights act actions may well reflect a desire to limit small business' exposure, but that has

laws if it bears some rational relation to the legitimate state purpose of the act") (citing *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) and footnote omitted).

**15.** The applicable and controlling rule with respect to attorney's fees, known as the American rule, is that "[a]s a general rule each litigant bears his or her own attorney's fees absent a

contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986). There are no fee-shifting exceptions that apply to this case to remove it from the realm of the "American rule," which requires individual responsibility for costs and fees.

not stopped this Court's recognition of common-law actions against small businesses; nor should it stop fee awards in appropriate common-law cases. After all, the Legislature can have the "last word" anytime it wishes in this area. This Court need not strain to divine legislative intent in an area where the Legislature has not spoken.

Whether this Court chooses to allow attorney fee awards in common-law employment discrimination cases is a matter of choice, not permission. Rather than claiming that it is not "permitted" to make such an extension, the majority should simply state openly that it finds such an extension to be unjustified.

The majority has made its choice; mine would be a different one. I would allow the *possibility* of fee awards in common-law employment discrimination cases, in the discretion of the trial judge. The amount of actual damages in these cases is often quite low, in part because employees are generally required to mitigate their losses by getting another job. The public policy of encouraging those who suffer sexual harassment and retaliatory discharge to file claims is frustrated when attorneys will not take low-damages cases. A possible award of attorney fees thus furthers public policy.

Accordingly, I respectfully concur, in part, and dissent, in part.