700 S.E.2d 183

**Tricia ROTH and Brian Roth, Plaintiffs Below, Appellants,**

v.

**DeFELICECARE, INC., and Leslie DeFelice, Defendants Below, Appellees.**

No. 34805.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 27, 2010.

Decided June 8, 2010.

Dissenting Opinion of Justice Benjamin July 26, 2010.

218

Ronald W. Zavolta, Esq., Wheeling, WV, for Appellants.

Bradley K. Shafer, Esq., Ancil G. Ramey, Esq., Steptoe & Johnson, Wheeling, WV, for Appellees.

PER CURIAM:

This case is before the Court upon the appeal of the Order of the Circuit Court of Ohio County, West Virginia, entered on October 16, 2008, dismissing the Complaint filed by the Appellants and Plaintiffs below, Tricia Roth and Brian Roth, against the Appellees and Defendants below, DeFeliceCare, Inc., and Leslie DeFelice, pursuant to West Virginia Rule of Civil Procedure 12(b)(6). The circuit court determined that the Appellants failed to allege any cause of action upon which relief could be granted. The Appellants sole complaint on appeal is that the circuit court erred in granting the Motion to Dismiss filed by the Appellees. Based upon a review of the record, the parties' respective briefs and arguments, as well as all other matters submitted before the Court, we reverse the decision of the circuit court and remand the case for further proceedings.

## I. Procedural and Factual Background

This case arises from a Complaint filed by the Appellants on June 6, 2008, against the Appellees in the Circuit Court of Ohio County. In their Complaint, the Appellants alleged that in June of 2006, "Plaintiff [Tricia] Roth was directed by Defendant DeFelice to report to work on the weekend prior to Plaintiff Roth commencing her one week vacation." Other than requesting Mrs. Roth to come into work over the weekend, there was no specific time that she was told to report. The Appellants averred that Mrs. Roth went to DeFeliceCare as directed by Mr. DeFelice. When she entered DeFeliceCare, she "observed Defendant DeFelice and/or Michelle Kelly partially clothed and in a compromised position." Mrs. Roth "was then directed to a conference room by Defendant DeFelice while Defendant DeFelice and/or Michelle Kelly fully clothed themselves." According to the allegations, the "Defendant DeFelice proceeded to order Plaintiff Roth to forget about what she observed and threatened Plaintiff Roth with the loss of her respiratory therapy license and loss of her employment with Defendant DeFelice Care." Mrs. Roth told Mr. DeFelice that she would remain silent about her observations.

Mrs. Roth proceeded to go on her vacation and, upon her return, met with the Mr. DeFelice. During this meeting, Mrs. Roth alleges that Mr. DeFelice fired her from her employment with DeFeliceCare. Despite Mrs. Roth informing Mr. DeFelice that she had not told anyone about what she had observed, Mr. DeFelice told her that "he was terminating her employment with DeFeliceCare because he did not like how she dressed and he did not like the style[/]color of her hair." Mrs. Roth was an at-will employee at the time of her termination.

The Appellants filed a Complaint alleging counts of hostile workplace, wrongful termination, employment discrimination, retaliatory discharge, common law reprisal and intentional and/or reckless infliction of emotional distress stemming from her termination from employment with the Appellees as a respiratory therapist. The Appellees responded to the Complaint by filing a Motion to Dismiss pursuant to West Virginia Rule of Civil Procedure 12(b)(6). After a hearing on the motion, the circuit court ruled in favor of the Appellees, dismissing all eight counts in the Appellants' Complaint.

## II. Standard of Review

■ The standard of review applicable to dismissal orders entered pursuant to West Virginia Rule of Civil Procedure 12(b)(6) is that the "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995); *accord* Syl. Pt. 2, *Noland v. Virginia Ins. Reciprocal*, 224 W.Va. 372, 686 S.E.2d 23 (2009). This Court has previously stated that "[t]he purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint. A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Cantley v. Lincoln County Comm'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007). "Since the prefer-

ence is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008). Thus, in syllabus point three of *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), this Court held that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Utilizing the foregoing standards, we review the circuit court's decision to dismiss the Appellants' Complaint.

## III. Discussion of Law

### A. Count One—Hostile Workplace

■ The first count contained in the Complaint is for hostile workplace. The Appellants alleged that Mrs. Roth "was subjected to improper and sexually explicit conduct by her superiors ... thereby creating a hostile and abusive environment for employment all in violation of West Virginia Human Rights Act. W. Va.Code § 5–11–1 *et seq.*"[1] According to the allegations, "Defendant DeFelice Care authorized, directed and acquiesced in the allowance of pervasive, explicit and habitual harassment which included but is not limited to: subjecting her to such sexually explicit conduct, threats of loss of license, loss of employment and termination for unwanted sexually explicit conduct she observed." Although not expressly alleged in the Complaint, it appears that the hostile workplace claim is based upon Mrs. Roth being in a protected gender class, given the use of the terms "sexual discrimination and/or harassment" in the averments.

■ The Court previously has held that

[a]n employee may state a claim for hostile environment sexual harassment if unwel-

---

1. *See* W. Va.Code §§ 5–11–1 to –21 (2006 & Supp. 2009) (hereinafter also referred to as the "West Virginia Human Rights Act"). In syllabus point one of *Price v. Boone County Ambulance Auth.*, 175 W.Va. 676, 337 S.E.2d 913 (1985), the

Court held that "[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act."

come sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature have the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment.

Syl. Pt. 7, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995).[2]

The circuit court, relying upon the law enunciated in *Hanlon,* found that the allegations contained in the Complaint consisting of

"subjecting . . . [Mrs. Roth] to such sexually explicit conduct, threats of loss of license, loss of employment and termination for unwanted sexually explicit conduct she observed[,]" . . . "refers to the alleged incident where Tricia Roth walked in on Kelly and DeFelice. . . . There is nothing here that took place because Tricia Roth is a female. Therefore, there is not hostile work environment claim."

*See id.*

We disagree with the circuit court's conclusion that, based upon a review of the allegations in the Complaint, what transpired with the Appellant was not due to her gender.[3] Rather, we find the Appellants sufficiently pled their cause of action for hostile workplace to survive a motion to dismiss made pursuant to West Virginia Rule of Civil Procedure 12(b)(6). This Court has previously

found that motions to dismiss are generally viewed with disfavor because the complaint is to be construed in the light most favorable to the plaintiff and its allegations are to be taken as true. *Sticklen v. Kittle,* 168 W.Va. 147, 163–64, 287 S.E.2d 148, 157 (1981). Undeniably, the Appellants must still develop sufficient facts in order ultimately prevail on this claim, but it does not appear beyond doubt to the Court that the Appellants can prove no set of facts in support of Mrs. Roth's claim which would entitle her to relief. Syl. Pt. 3, *Chapman,* 160 W.Va. at 530, 236 S.E.2d at 207. As, however, Justice Cleckley, writing for the majority in *Scott Runyan Pontiac–Buick, Inc.,* stated:

The primary purpose of these provisions [referring to the provisions of West Virginia Rule of Civil Procedure 8] is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is. Although entitlement to relief must be shown, **a plaintiff is not required to set out facts upon which the claim is based.**

194 W.Va. at 776, 461 S.E.2d at 522.[4]

### B. Count Two—Wrongful Termination

 The next cause of action alleged by

---

**2.** In formulating this new syllabus point, the Court relied upon the following:

To establish a claim for sexual harassment based upon a hostile or abusive work environment under the Human Rights Act, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was " 'sufficiently severe or pervasive to alter the . . . [plaintiff's] conditions of employment and create an abusive work environment' "; and (4) it was imputable on some factual basis to the employer. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301–02 (1993). (Citation omitted).

*Hanlon,* 195 W.Va. at 106–07, 464 S.E.2d at 748–49.

**3.** The Appellants argued before this Court that "it is reasonable to conclude that a similarly situated male employee would not have been subjected to summarily [sic] firing under these factual circumstances at issue. All too often, males view such inappropriate, unwelcome sexually explicit harassing acts and behaviors as sexual conquest to be admired." As it relates to the

Appellants' burden of proof on the gender issue, this statement by the Appellants is not based in facts, but is speculative at best. Unquestionably, to prevail on this claim, the Appellants will have to offer sufficient evidence to carry their burden on their claims. The issue before the Court at this juncture, however, is whether the Appellants' Complaint is sufficiently pleaded.

**4.** The Court notes that our interpretation of West Virginia Rule of Civil Procedure 8 is more liberal than what is allowed under the federal rules. The United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), required that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949. Thus, under the federal rules, more than a notice pleading is required insofar as a plaintiff is required to plead facts to show that the plaintiff has stated a claim entitling him to relief. Under West Virginia law, however, this

the Appellants was wrongful termination.[5] In support of this count, the Appellants averred that Mrs. Roth was "subjected to improper and sexually explicit conduct by her superiors including the president and CEO Defendant DeFelice ... thereby creating a hostile and abusive environment for employment all in violation of the West Virginia Human Rights Act." The Appellants further alleged that the Appellees terminated her "based on observing defendant DeFelice's sexually explicit and improper behavior." The Appellants alleged that "as result of the sexual discrimination and/or harassment of Plaintiff Roth, which was known by Defendant DeFeliceCare to be unlawful, in violation of the public policies of the State of West Virginia, and in violation of the Defendant DeFeliceCares's own policies and procedures," Mrs. Roth was terminated.

▇▇▇ The Court held in the syllabus of *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

*Accord* Syl. Pt. 2, *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 285 S.E.2d 679 (1981); Syl. Pt. 1, *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980); *see Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325, 325 S.E.2d 111, 115 (1984). The burden is on the plaintiff to establish the existence of a substantial public policy. Syl. Pt. 8, *Page v. Columbia Natural Res.*, 198 W.Va. 378, 480 S.E.2d 817 (1996). "A deter-

mination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." *Cordle*, 174 W.Va. at 322, 325 S.E.2d at 112, Syl. Pt. 1. To identify a substantial public policy, the Court looks "to established precepts in [the State's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Birthisel v. Tri–Cities Health Servs. Corp.*, 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (1992).

▇▇▇ Based upon its review of the Complaint, the circuit court found that the Appellants failed to carry their burden of establishing a substantial public policy. Specifically, the lower court focused solely on the criminal statutes relied upon by the Appellants [6] and concluded that "a public policy disfavoring public nudity is not at issue in this case and upholding Plaintiff's discharge would not compromise this policy." The circuit court, however, failed to address the Appellants' argument that a substantial public policy was present because of her allegations of sex discrimination and sexual harassment in employment and that such discrimination or harassment contravenes the public policy articulated in the West Virginia Human Rights Act.

Further, the circuit court did not address the Appellants argument that Mrs. Roth was terminated due to what she witnessed, because her observations of sexual relations between Mr. DeFelice and the other female employee, Mrs. Kelly, made Mrs. Roth a potential discoverable witness in a case involving similar conduct against Mr. DeFelice. The Appellants assert that the allegations in the other lawsuit styled *Champion v. DeFelice Care Inc., et al.*, Civil Action No. 05–C–519, involved the Appellee Leslie DeFelice's "legendary propensities for womanizing and

---

Court has not adopted the more stringent pleading requirements as has been the case in federal court and all that is required by a plaintiff is "fair notice." *Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. at 776, 461 S.E.2d at 522.

**5.** The Appellants acknowledged before the circuit court and this Court that the allegations in Count Two are the same as Count Five entitled "Common Law Reprisal." Accordingly, this Court upholds the dismissal of Count Five in the Complaint as being superfluous.

**6.** In the Appellants' response to the Appellees' Motion to Dismiss, the Appellants argued that the provisions of West Virginia Code § 61–8–9 (2005) regarding indecent exposure provided the basis for a substantial public policy. Specifically, the Appellants argued that there was a substantial public policy against public nudity and performing sexual acts in public.

inappropriate sexual acts and behaviors in the workplace." Significantly, before the circuit court, the Appellants argued that "Mrs. Roth's observations in June of 2006 would have not only supported the allegations of the plaintiff [in the *Champion* case] ... but would have undermined the future under oath testimony of Mr. DeFelice and Mrs. Kelly." There apparently was testimony in the *Champion* case that indicated that Mr. DeFelice and Mrs. Kelly were not involved in a relationship.

■ Regarding the burden that the Appellants bear in establishing the existence of a substantial public policy, prefaced against the well-established case law that the determination of whether a substantial public policy exists is a question of law, the Court finds that the circuit court's dismissal of this cause of action without considering all the bases relied upon by the Appellants regarding the existence of a substantial public policy was erroneous.

While the Court does not disagree with the circuit court's determination that a substantial public policy did not arise in this case from the provisions of West Virginia Code § 61-8-9,[7] the circuit court simply failed to consider all the bases for the substantial public policy set forth by the Appellants in their opposition to the Motion to Dismiss prior to dismissing this count. For instance, the Appellants pleaded that the Appellees' conduct in terminating her violated the public policies of this State. Further, as previously mentioned, in their opposition to the Motion to Dismiss, the Appellants argued that a substantial public policy was violated when she was terminated because of her allegations of sex discrimination and sexual harassment in employment, because such discrimination or harassment contravenes the public policy articulated in the West Virginia Human Rights Act. Further, the Appellants argued in opposition to the Motion to Dismiss that a substantial public policy was violated because Mrs. Roth was a potential witness based in other litigation due to her observations of Mr. DeFelice and Mrs. Kelly.

Just as the circuit court considered the reliance by the Appellants on the criminal statute regarding indecent exposure in determining that a substantial public policy did not exist, the circuit court should have considered the other viable grounds the Appellants relied upon to show a violation of a substantial public policy.

■ Unlike the Appellants' reliance upon the criminal statute, there is support for the Appellants' assertions that a substantial public policy was violated if the Appellants ultimately prove that Mrs. Roth was terminated either because of allegations of sexual harassment or that she was going to be a witness in the other litigation. Regarding the former basis, this Court has held in syllabus point eight of *Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997), that

[e]ven though a discharged at-will employee has no statutory claim for retaliatory discharge under W. Va.Code, 5-11-9(7)(C) [1992] of the West Virginia Human Rights Act because his or her former employer was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed, as required by W. Va.Code, 5-11-3(d) [1994], *the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination*

---

7. It is important to note that the specific grounds supporting the Appellants' pleaded averment of a violation of a substantial public policy were set forth by the Appellants in their response to the Motion to Dismiss. In footnote seven of *Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court stated that

[o]ur review of the case is limited to the sufficiency of the complaint; thus, we must accept as true all well-pled facts and must draw all reasonable inferences in favor of the dismissed party. *Leatherman v. Tarrant Coun-*

*ty Narc. Intell. & Coord. Unit*, 507 U.S. 163, [163–65], 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517, 521–22 (1993). **Any facts asserted in a memorandum in opposition to a motion to dismiss but not contained in the complaint are relevant to the extent that they "could be proved consistent with the allegations."** *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984). (Citation omitted).
194 W.Va. at 776 n. 7, 461 S.E.2d at 522 n. 7 (emphasis added).

*and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, W. Va.Code, 5–11–1, et seq.*

200 W.Va. at 423, 490 S.E.2d at 25, Syl. Pt. 8 (emphasis added); *accord* Syl. Pt. 1, *Kalany v. Campbell*, 220 W.Va. 50, 640 S.E.2d 113 (2006).

■ Moreover, regarding the allegation that Mrs. Roth was terminated because she was going to be a potential witness in other litigation, this Court has held that "[i]t is against substantial public policy of West Virginia to discharge an at-will employee because such employee has given or may be called to give truthful testimony in a legal action." *Page*, 198 W.Va. at 382, 480 S.E.2d at 821, Syl. Pt. 4.

Consequently, the circuit court erred in its determination that the Appellants failed to sufficiently plead a violation of a substantial public policy.

### C. Count Three—Employment Discrimination

■ The next count brought by the Appellants sounded in employment discrimination. The Appellants alleged that Mrs. Roth was a member of a protected class on the basis of gender. She alleged that she was subjected to "sexually explicit conduct" and that "but for her protected status," she would not have been terminated.

■ In syllabus point three of *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), this Court set out the elements of a prima facie claim of disparate treatment:

In order to make a prima facie case of [disparate treatment] employment discrimination under the West Virginia Human Rights Act, W. Va.Code § 5–11–1 et seq. (1979), the plaintiff must offer proof of the following:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

(3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Id.*

The circuit court determined that the firing had nothing to do with her gender and dismissed the claim. Rather, the circuit court found that the reason that Mrs. Roth was terminated was because she walked in on her employer in a compromising position with Ms. Kelly.

As previously discussed in connection with the Appellants' hostile work environment claim, taking Mrs. Roth's allegations as true, the Court disagrees with the circuit court's conclusion that, based upon a review of the allegations in the Complaint, what transpired with the Appellant was not due to her gender. Rather, we find the Appellants sufficiently pleaded their cause of action for employment discrimination to survive a motion to dismiss made pursuant to West Virginia Rule of Civil Procedure 12(b)(6).

### D. Count Four—Retaliatory Discharge

■ The Appellants next pleaded a count for retaliatory discharge, which included the following allegations:

(38) Plaintiff Roth was actively engaged in work within the scope of her employment when she was subjected to sexual discrimination and/or harassment, an activity protected under West Virginia Code § 5–11–1 *et seq.*

(39) Defendant DeFeliceCare and/or Defendant DeFelice, through Defendant DeFelice was aware that Plaintiff Roth was continuously subjected [to] sexual discrimination and/or harassment.

(40) Plaintiff Roth's wrongful discharge/termination followed her unwanted sexually explicit observations of defendant DeFelice and Michelle Kelly and such sexual discrimination and/or harassment was within a time period that retaliatory discharge can be inferred.

(41) Plaintiff Roth did not commit any dischargeable offense.

(42) As a direct and proximate result of the employment discrimination of Plaintiff Roth, which was known by Defendant DeFeliceCare to be unlawful, in violation of

the public policies of the State of West Virginia, and in violation of Defendant De-FeliceCares' own policies and procedures.

In reviewing the foregoing allegations, the Appellants alleged that being "actively engaged in work within the scope of employment" is a protected activity. Additionally, in the Appellants' response to the Appellees' Motion to Dismiss, the Appellants argued that "not being subjected to nudity or sexual acts in public is a protected activity." Finally, the Appellants argued that "reporting or expressing her displeasure for actions she believes is a violation of the West Virginia Human Rights Act," is a protected activity.

The circuit court, in dismissing this count, determined that

> there is nothing in the Complaint identifying Tricia Roth as being engaged in any protected activity and no argument was made during briefing that she was. If she was not engaged in a protected activity, she cannot be the victim of retaliatory discharge and therefore, this claim must be dismissed.

■ In order to establish a retaliatory discharge claim, this Court has held the following:

> " 'In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W. Va.Code, 5–11–1, et seq., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.' Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986)." Syl. pt. 1, *Brammer v. Human Rights Commission*, 183 W.Va. 108, 394 S.E.2d 340 (1990).

8. Similarly, the filing of a race discrimination complaint against an employer is a protected activity. *FMC Corp. v. W. Va. Human Rights*

*Hanlon*, 195 W.Va. at 103, 464 S.E.2d at 745, Syl. Pt. 5.

■ Additionally, regarding what type of conduct constitutes a "protected activity" the Court has held that

> "Protected activity" under the West Virginia Human Rights Act includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act. This standard has both an objective and a subjective element. The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible. Further, the view must be honestly held and be more than a cover for troublemaking. Thus, even if there was no actionable sexual harassment, the plaintiff could still have been engaged in a protected activity if she complained about being sexually harassed.

Syl. Pt. 7, *Conrad v. ARA Szabo*, 198 W.Va. 362, 480 S.E.2d 801 (1996). This Court has recognized that the being terminated because of the filing of a sexual discrimination complaint against an employer involved the employee being engaged in a protected activity. *Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 179 W.Va. 53, 61, 365 S.E.2d 251, 259 (1986).[8]

From the Court's review of the allegations contained in the Appellants' Complaint, as well as those facts contained in the Appellants' response to the Motion to Dismiss, and accepting those allegations as true, there simply are no allegations that satisfies the necessary element of the retaliatory discharge cause of action that Mrs. Roth was terminated because she was engaged in a protected activity. We reach this conclusion by reviewing the Appellants' allegation in the light most favorable to the Appellants' juxtaposed against the Court's holdings regarding the type of activity that constitutes "protected activity." There simply are no averments that Mrs. Roth was terminated because she either had complained or filed a complaint sounding in sexual harassment or discrimination. Neither are than any allegations that

*Comm'n*, 184 W.Va. 712, 715, 403 S.E.2d 729, 732 (1991).

Mrs. Roth was terminated from her employment because she opposed an employment practice that she reasonably and in good faith believed violated the provisions of the West Virginia Human Rights Act. *Conrad,* 198 W.Va. at 367, 480 S.E.2d at 806, Syl. Pt. 7.

Consequently, the Court affirms the circuit court's dismissal of the Appellants' cause of action for retaliatory discharge.

### E. Count Six—Intentional Infliction of Emotional Distress

■ Finally, the Appellants alleged a claim for intentional infliction of emotional distress or the tort of outrage. Included within the averments supporting this count were that Mrs. Roth "has been caused to suffer and sustain intentional or reckless infliction of emotional distress," and that "the conduct of Defendant DeFeliceCare was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency and was intolerable in a civil society." The Appellants also averred that "the emotional distress suffered by Plaintiff Roth was so severe that no reasonable person could be expected to endure it."

■ In *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 445 S.E.2d 219 (1994), *modified on other grounds as stated in Tudor v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 111, 506 S.E.2d 554 (1997), the Court stated that:

> We first defined the tort of outrage or intentional infliction of emotional distress in Syllabus pt. 1, *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982):
>
>> One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm.
>
> This definition is patterned after Section 46 of the Restatement (Second) of Torts which requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious

and utterly intolerable in a civilized community." *Id.* at 704–05, 289 S.E.2d 692. *Dzinglski,* 191 W.Va. at 283, 445 S.E.2d at 225. This Court also has held that in analyzing a tort of outrage claim in the employment context,

> The prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

*Id.* at Syl. Pt. 2.

The circuit court determined that because there were no allegations regarding the manner in which the discharge was carried out, there is no claim. Again, taking the allegations contained in the Complaint as true, the Court concludes that there were sufficient allegations supporting the Appellants' intentional infliction of emotional distress claim. Mr. DeFelice called Mrs. Roth and asked her to come to the office. In complying with that request of her employer, Mrs. Roth was placed by her employer into unwantedly observing Mr. DeFelice and Ms. Kelly in a sexually compromising position. Because of that observation, Mr. DeFelice threatened Mrs. Roth not only with termination from her employment, but with possibly losing her respiratory therapist license, which was her means of making a living. Mrs. Roth was then terminated within the same week, ostensibly because Mr. DeFelice did not like how she dressed or the style and color of her hair. Given the proximity between Mrs.

Roth's observation and her termination, there are sufficient allegations to support her claim that her emotional distress resulted from the outrageous manner by which the employer effected the discharge. *Id.*

## IV. Conclusion

Based on the foregoing, the decision of the Circuit Court of Ohio County, West Virginia, is affirmed, in part, and reversed, in part, and remanded for further proceedings consistent with this opinion.

Affirmed, in part; Reversed and remanded, in part.

Justice BENJAMIN and Justice KETCHUM dissents and files dissenting opinions.

KETCHUM, J., dissenting:

I respectfully dissent from the majority opinion because the plaintiffs' complaint does not state a cause of action.

The complaint is very detailed and alleges facts that completely lay bare the plaintiffs' grievance. In fact, even though the majority opinion makes clear that a plaintiff is not required to set out facts upon which a claim is based, I would go so far as to say the complaint is so well drafted that it meets the heightened pleading requirements in federal courts outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[1]

But the elegantly drafted facts alleged in the complaint support the trial judge's dismissal of the complaint. The complaint has 7 counts. In essence, these counts complain of (1) hostile work environment because of sexual discrimination, (2) wrongful or retaliatory discharge and (3) intentional inflection of emotional distress. While the complaint paints defendant Leslie DeFelice as a pretty despicable actor, I do not see how his actions rise to an actionable level.

The detailed facts in the complaint *do not allege* that the defendant's firing of plaintiff Tricia Roth was because of her gender, or because she was a victim of or threatened to report unwanted sexual advances, or because she engaged in a protected activity, or that the defendant's misconduct violated a state law, or that the plaintiff's discharge itself took place in an intolerable or outrageous manner. The complaint merely alleges that she stumbled upon her boss and another employee in a sexually compromising position in the office, and then later got fired. While her discovery of this sexual escapade was unfortunate, it does not prohibit her later termination as an at-will employee, no matter how ridiculous Mr. DeFelice's stated reasons for her termination were. Our laws prohibiting gender discrimination, sexual harassment, retaliatory discharge and outrage are not a general civility code.

Accordingly, I respectfully dissent.

BENJAMIN, J., dissenting:

(Filed July 26, 2010)

I join with my colleague, Justice Ketchum, and respectfully dissent from the majority decision. Though the complaint here capably sets forth a quantity of salacious allegations, the consideration before us, as it was for the court below, is whether all of these allegations adequately give notice of a claim for which our legal system may grant relief. I suspect the majority was swayed a bit by the nature of the Appellant's allegations. However, ours is and must be an inquiry and consideration of legal, not personal, dimensions. This court is simply not tasked with nor equipped to render judgments solely of a "feel good" nature. In a court such as this, such "feel good" justice is situational justice; its outcome necessarily dependent more on the personal beliefs and policy-preferences of individual judges than on the rule of law. Though tempting to make an exception here or there, "feel good" judging leads to insta-

1. Because of the problems created by "strike suits" and the high cost of frivolous litigation, the Supreme Court tightened the pleading standards in federal courts. "Thus, in *Iqbal*, the Court stated that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief *that is plausible on its face.*" ' " *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009), *quoting Iqbal*, 556 U.S. at ——, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

bility in our legal system. Justice Ketchum succinctly sets forth the legal insufficiencies of appellant's pleadings and why dismissal, though perhaps unfortunate, was nevertheless appropriate below.

I write separately to comment more generally on the concept of notice pleadings and the current trends afoot to move courts back to fact-based pleadings. Justice Ketchum references two recent United States Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007) and *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). By requiring federal courts to now adopt a two-pronged approach to their review of pleadings in which allegations that are merely conclusory are not considered and the remaining allegations are viewed from a "plausibility" of entitlement to relief standard, *Twombly* and *Iqbal* have had a profound impact on the pleadings terrain of the federal court system. That this shift to more fact-specific pleadings happened without advanced warning to litigants in a legal system which for some seventy years has been notice-based like ours is something worthy of note to West Virginia judges and attorneys. I suspect it will be only a matter of time before this Court is confronted with the issue of whether West Virginia should adopt an interpretation of our *Rules of Civil Procedure* akin to that of the United States Supreme Court and should change our standard for dismissing a pleading under Rules 8(a) and (e), and 12(b)(6) of the *West Virginia Rules of Civil Procedure*.

The pleadings components of the *Federal Rules of Civil Procedure* are substantively identical to those in our state rules. Rules 8(a)(2) and (d)(1) of the *Federal Rules of Civil Procedure* require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct", respectively. Rules 8(a)(1) and e(1) of the *West Virginia Rules of Civil Procedure* likewise require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation shall be simple, concise, and direct", respectively. Until now, the plain language of these rules has defined the simplicity of our concept of notice pleadings. First appearing in the 1938 Federal Rules of Civil Procedure, notice-based pleading requirements replaced fact-based pleading requirements—requirements viewed by many as having inhibited access to the justice system.[1]

In 1957, the United States Supreme Court rendered its decision in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (abrogated by *Bell Atlantic v. Twombly, supra*), in which it held that a claim could not be dismissed unless there was "no set of facts" that the plaintiff could set forth to show that he or she was entitled to relief.[2] West Virginia adopted the *Conley* standard. *See Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). As noted by the majority herein, the *Conley* standard, though it has now been abrogated by the United States Supreme Court, apparently remains viable in West Virginia—at least for now.

Should West Virginia consider a heightened pleadings requirement? The reasons which led the United States Supreme Court to abrogate *Conley* cannot be simply dismissed. West Virginia would be foolish to simply stick its judicial head in the sand. The same policy considerations facing federal cases are also applicable in the state court system. Just as the notice-pleading provisions were designed to enhance access to the judicial system, a system which is overly expensive and overly complex may inhibit a party's access to justice. Case delays, litigation costs, costly procedures, and the like are necessary and present concerns to our justice system.

On the other hand, I am not certain that a "plausibility" standard at the initial pleading level is necessarily a good thing, since such a

---

1. West Virginia adopted its *Rules of Civil Procedure* in 1960.

2. As recently as in *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the United States Supreme Court held that requiring particularized pleadings was inconsistent with the notice pleading provisions of the *Federal Rules of Civil Procedure*.

standard is certainly dependent on the legal and factual context of a given controversy and since it would seem to require a judge to make a value determination on the likelihood of whether a claim will ultimately succeed or not before meaningful discovery occurs, even if the law provides a remedy for the conduct alleged. Furthermore, I am uncertain how predictable the current federal standard may be given that each judge has a different level of experience in making such determinations. I believe we must also be weary of a procedure which could be harsh on *pro se* litigants or otherwise be viewed as imposing unnecessary hurdles at the courthouse door to the substantial rights of parties.

As to delays and costs in litigation, I believe there are a host of opportunities already present within our *Rules of Civil Procedure* to address, at least in part, such concerns. These include Rule 12(e) requests for a more definite statement of a pleading, early Rule 16 pretrial conferences for scheduling and mandatory case management deadlines (held by the trial judge within a short time of the filing of the responsive pleading),

and a court's tight management of discovery under Rules 26 to 37.

Ultimately, it is only a matter of time before this issue squarely confronts us. I believe it preferable that we consider it in the reflection of rule-making rather than in the vacuum of an individual case before us on appeal.

Finally, I must disagree on one point with my colleague, Justice Ketchum. I do not believe the pleading herein would satisfy the heightened *Twombly/Iqbal* pleading standard any more than it fails to meet the *Conley* standard. In making this determination, I believe that Rules 8(a) and (e) do have a "weeding out" potential. Here, whether one applies a "possibility" standard or a "plausibity" standard, the Plaintiffs still fail to state a claim for which relief may be granted. Dismissal was appropriate.