453 S.E.2d 656

Lylloth G. WOODALL, Plaintiff
Below, Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
596, Defendant Below, Appellee.

No. 22186.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 16, 1994.

Concurring Opinion of
Justice Cleckley Jan. 6, 1995.

Larry Harless, Charleston, for appellant.

Robin Jean Davis, John F. Dascoli, Segal and Davis, L.C., Charleston, for appellee.

McHUGH, Justice:

The appellant, Lylloth G. Woodall, appeals the May 19, 1993, order of the Circuit Court of Harrison County which granted the appellee's, the International Brotherhood of Electrical Workers, Local 596 (hereinafter "IBEW Local 596"), motion for judgment notwithstanding the verdict. For reasons set forth below, we affirm the circuit court's order.

I

On March 30, 1984, the appellant filed a complaint in the Circuit Court of Harrison County alleging that she was permanently discharged by IBEW Local 596 because of her age and sex in violation of The West Virginia Human Rights Act (hereinafter the "Human Rights Act") set forth in *W.Va.Code*, 5–11–1, *et seq.*[1] The appellant had been employed by IBEW Local 596 as a secretary/bookkeeper, but was not a member of the IBEW Local 596 union. A jury trial was held in December of 1992, and the jury found for the appellant. The jury awarded her $60,000 in lost wages and $20,000 for emo-

---

**1.** This Court has held that " 'A plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act.' Syl. Pt. 1, *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985)." Syl. pt. 3, *FMC Corp. v. Human Rights Comm'n*, 184 W.Va. 712, 403 S.E.2d 729 (1991).

tional distress. The circuit court entered the judgment order on December 23, 1992.

■ On May 19, 1993, the circuit court granted IBEW Local 596's motion for judgment notwithstanding the verdict. The circuit court, explaining its decision in a twenty-three page memorandum order, found that the appellant failed to prove a *prima facie* case under the Human Rights Act since IBEW Local 596 was not an employer as defined by *W.Va.Code,* 5–11–3(d) [1981],[2] nor was the appellant a member of IBEW Local 596 rendering *W.Va.Code,* 5–11–9(c) [1981] [3] inapplicable. The appellant appeals the circuit court's ruling.[4]

## II

The first issue involves the labor organization's dual role under the Human Rights Act as an employer and a labor organization. Pursuant to *W.Va.Code,* 5–11–3(d) [1981] a labor organization is liable for unlawful discriminatory practices as an employer under the Human Rights Act if it employs twelve or more persons within this State.[5] Additionally, the Human Rights Act imposes liability upon labor organizations for unlawful discriminatory practices pursuant to *W.Va.Code,* 5–11–9(c) [1981] which states:

> It shall be an unlawful discriminatory practice....
>
> (c) For any labor organization because of race, religion, color, national origin, an-

cestry, sex, age, blindness or handicap of any individual to deny full and equal membership rights to any individual or otherwise to discriminate against such individual with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment[.]

■ The question arises as to whether an employee of a labor organization, who is not a member of that labor organization, may file an action under the Human Rights Act against that labor organization pursuant to *W.Va.Code,* 5–11–9(c) [1981] even though the labor organization does not meet the definition of employer pursuant to *W.Va.Code,* 5–11–3(d) [1981]. The resolution of this issue depends on whether *W.Va.Code,* 5–11–9(c) [1981] only applies to unlawful discriminatory practices relating to employers and to would-be members and members of a labor organization, or whether this code section also applies to employees of a labor organization who are not members of that labor organization. Since we have not addressed this issue before, an examination of the federal counterpart to the Human Rights Act will be useful for interpreting our Act.[6]

■ The federal counterpart to *W.Va. Code,* 5–11–9(c) [1981] is found in Title VII at 42 U.S.C. § 2000e–2(c) (1988), and although worded differently, it is substantially the same.[7] Not many courts have addressed this

---

2. *W.Va.Code,* 5–11–3 was amended in 1987, 1989, 1992 and 1994; however, the amendments do not affect the outcome of this case.

3. *W.Va.Code,* 5–11–9 was amended in 1989 and 1992. The only difference between the 1981 version and the 1992 version which is relevant to the case before us is that the pertinent section regarding labor unions was labeled as *W.Va. Code,* 5–11–9(c) in 1981, whereas, in 1992 the same section was labeled *W.Va.Code,* 5–11–9(3).

4. We review *de novo* the granting of a motion for a judgment notwithstanding the verdict. *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 452 S.E.2d 436 (1994) (holding the review of denying motion for a judgment notwithstanding the verdict is *de novo* ); *White v. County of Newberry, South Carolina,* 985 F.2d 168 (4th Cir.1993) (holding the granting of a motion for a judgment notwithstanding the verdict is reviewed *de novo* ).

5. *W.Va.Code,* 5–11–3(d) [1981] states: "The term 'employer' means the state, or any political sub-

division thereof, and any person employing twelve or more persons within the state: Provided, that such term shall not be taken, understood or construed to include a private club[.]"

6. We have noted in the past that although we are not bound by federal law, we have adopted federal precedent when we believe it is compatible with our Human Rights Act. *See Paxton v. Crabtree,* 184 W.Va. 237, 250 n. 26, 400 S.E.2d 245, 258 n. 26 (1990). *See West Virginia University v. Decker,* 191 W.Va. 567, 447 S.E.2d 259 (1994).

7. 42 U.S.C. § 2000e–2(c) (1988) states:

> (c) It shall be an unlawful employment practice for a labor organization—
> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
> (2) to limit, segregate, or classify its membership or applicants for membership, or to

issue. However, under Title VII there is a split of authority as to whether a union may be liable to its employee for discriminatory actions when it does not meet the statutory definition of employer. Transfer Vol. Lex K. Larson, *Employment Discrimination* § T46.00 at T–628 (2d ed. 1994).

The Equal Employment Opportunity Commission (hereinafter "EEOC") has taken the position that discrimination by the union against its employee, who is not a member of the employing union, is covered under Title VII if the labor union meets the "employer" definition or if it qualifies as a labor organization under the act. *See* EEOC Dec. No. 7157, 3 F.E.P. 94 (July 17, 1970) and EEOC Case No. 7–3–336U, 1 F.E.P. 909 (June 18, 1969).

On the other hand, the United States District Court of Minnesota has not adopted an either/or approach. *Phelps v. Molders, Local 63,* 25 F.E.P. 1164 (D.Minn.1981). Instead, the federal court held that the federal counterpart to *W.Va.Code,* 5–11–9(c) [1981] applies only to dealings with employers or its membership and not to employer/employee relationships of the labor union. The federal court stated that if one is concerned with the employee/employer relationship, then the relevant *Code* section is the one defining employer: "There is no indication anywhere in the statute that a labor union as an employer is to be treated differently than any other employer (in other words, that it should not have to meet the definition of employer ...)." *Phelps* at 1166. *Cf. Chavero v. Local 241,* 787 F.2d 1154, 1155 n. 1 (7th Cir.1986) (The 7th Circuit quoted *Phelps* for the proposition that a labor organization must meet the definition of employer under Title VII before it will be held liable for unlawful discriminatory practices against its employee; however, the 7th Circuit was not required to decide this issue because the plaintiff had not appealed this issue.) *But cf.*

*Sciss v. Metal Polishers Union Local 8A,* 562 F.Supp. 293 (S.D.N.Y.1983) (The plaintiff, in her argument, cites to the EEOC position that the union, as an employer, can still be sued pursuant to Title VII, even though it does not meet the definition of employer. The court held that the plaintiff was not an employee of the union; therefore, it did not address the plaintiff's argument.)

Lex Larson stated the following when discussing this issue:

Although the conflict between *Phelps* and the earlier EEOC decisions has been frequently discussed, no court has yet decided the issue. However, the *Phelps* interpretation is preferable as more consistent with the scheme of Title VII. Congress expressly exempted employers having fewer than fifteen employees; there is no clear reason why unions should be singled out for harsher treatment. And such an interpretation does not detract from the union's liability for actions it takes against individuals when it acts as a labor organization.

Larson, *supra* at T–631 (footnotes omitted). We agree.

Accordingly, we hold that pursuant to the West Virginia Human Rights Act, set forth in *W.Va.Code,* 5–11–1 *et seq.,* a labor organization is liable for unlawful discriminatory practices in its capacity as an employer only if it meets the definition of employer set forth in *W.Va.Code,* 5–11–3(d) [1981] because *W.Va.Code,* 5–11–9(c) [1981] only applies to a labor organization's representative capacity which involves its dealings with employers and union members.

### III

Next, we address whether or not IBEW Local 596 employed twelve or more persons,

---

classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e–2 was amended in 1991; however, the amendment does not affect the outcome of the case before us.

thereby meeting the definition of employer set forth in *W.Va.Code,* 5–11–3(d) [1981].[8]

The record indicates that there were definitely at least two full-time employees: Mr. Wine, the business manager, and the appellant, who was the secretary. There was also possibly one part-time employee: Mr. Patsy, the maintenance man. Therefore, at the most, there were definitely three employees. The appellant contends that the following other people associated with IBEW Local 596 should also be considered employees: one full-time officer, four part-time officers, five directors of the IBEW Local 596, and three apprenticeship examiners.

*W.Va.Code,* 5–11–3(e) [1981], which defines employee, is not helpful in determining whether officers, directors, and apprenticeship examiners are employees. However, under Title VII "members of boards of directors are not employees by any standard[.]" 1 Lex K. Larson, *Employment Discrimination* § 4.05 at 4–32 (2d ed. 1994). In fact, the 7th Circuit points out "that the legislative history of Title VII 'militates against distorting traditional concepts of employment relationships.' ... Congress did not intend 'the term "employee" to include persons who are no more than directors of a corporation or unpaid, inactive officers.'" *Chavero, supra* 787 F.2d at 1156 (citations and footnote omitted).

■ Moreover, even under common law master-servant principles set forth in syllabus point 5 of *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990) directors and officers are not considered employees:[9]

There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior:* (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

As noted by IBEW Local 596, all five of the elected officers, except the business manager, work as full-time electricians for a third-party. Additionally, the five members of the executive board, who supervise and direct the management of the union, are all employed as electricians by third-party employers, and they only receive $5.00 per month from IBEW Local 596 for their services. Neither the examining board nor the job stewards receive any compensation for their services. Obviously, IBEW Local 596 does not control the officers or directors. Furthermore, the other three standards set forth in *Paxton* above have not been met.

■ Therefore, common sense dictates that officers and directors are not employees under the Human Rights Act. Accordingly, we hold that pursuant to *W.Va.Code,* 5–11–3(e) [1981] officers and directors of a corporation are not employees for jurisdictional purposes under the West Virginia Human Rights Act unless they have additional duties which qualify them as employees outside of their duties as officers and directors. Therefore, in the case before us, IBEW Local 596 does not fall within the definition of employer set forth in *W.Va.Code,* 5–11–3(d) [1981] of the Human Rights Act since it employs fewer than twelve employees.

## IV

■ Finally, we will discuss the standard of review to be applied in the case before us. The circuit court below granted the judgment notwithstanding the verdict because it found that the appellant (who was the plaintiff below) failed to establish a *prima facie* case of discrimination under the Human Rights Act. However, we find that the issues presented to us involve whether or not the circuit court had subject matter juris-

---

8. The trial court, in the case before us, asked the jury to determine from the evidence whether or not IBEW Local 596 employed twelve or more people. The jury found that it did.

9. When a statutory definition of employee is not helpful, courts look to the common law definition of employee. *See Nationwide Mutual Insurance*

*Company v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) and *Paxton, supra* at 244, 400 S.E.2d at 252 ("It does appear in the context of a civil rights discrimination case that courts have used common law master-servant principles to determine whether there is an employer-employee relationship.")

diction over IBEW Local 596, and not whether or not the plaintiff had established a *prima facie* case. Therefore, syllabus point 1 of *Schweppes U.S.A. Limited v. Kiger*, 158 W.Va. 794, 214 S.E.2d 867 (1975), *criticized on other grounds by S.R. v. City of Fairmont*, 167 W.Va. 880, 280 S.E.2d 712 (1981), controls the resolution of this case: "In order to render a valid judgment or decree, a court must have jurisdiction both of the parties and of the subject matter and any judgment or decree rendered without such jurisdiction will be utterly void."

Therefore, since IBEW Local 596 cannot be found liable in its role as an employer pursuant to *W.Va.Code*, 5–11–9(c) [1981], and since IBEW Local 596 does not meet the definition of employer pursuant to *W.Va. Code*, 5–11–3(d) [1981] since it employs fewer than twelve employees, IBEW Local 596 is not liable for unlawful discriminatory acts under the Human Rights Act. The circuit court did not have subject matter jurisdiction over the action. Accordingly, we affirm the circuit court's judgment notwithstanding the verdict.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

NEELY, J., deeming himself disqualified, did not participate.

CLECKLEY, Justice, concurring:

I agree entirely with Justice McHugh's analysis of the legal issues presented here and with his application of them to the facts of this case. Consistent with that analysis, however, I think it appropriate to emphasize that the determinations of whether a particular union is an "employer" within the meaning of W.Va.Code, 5–11–3(d) (1981), and whether a union's officers and directors are to be counted as employees under W.Va. Code, 5–11–3(e) (1981), must be made on a case-by-case basis. A different result might obtain, for example, if the officers or directors worked full-time in their capacity for the union, received an ample salary paid by the union, or functioned as subordinates in some hierarchical structure. Because none of those facts was present in this case, nor were there any other facts that would make the directors common law "employees," I concur.