# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2022 Term**

_____

No. 21-0484

_____

**FILED**

**April 22, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CYNTHIA D. PAJAK,**
**Plaintiff Below, Petitioner,**

**V.**

**UNDER ARMOUR, INC.; UNDER ARMOUR RETAIL, INC.;**
**AND BRIAN BOUCHER,**
**Defendants Below, Respondents.**

_____

**Certified Question from the United States District Court**
**for the Northern District of West Virginia**
**The Honorable Irene M. Keeley, United States District Judge**
**Civil Action No. 1:19-CV-160**

**CERTIFIED QUESTION ANSWERED**

_____

**Submitted: February 16, 2022**
**Filed: April 22, 2022**

Amy M. Smith
Robert M. Steptoe, Jr.
Larry J. Rector
Allison B. Williams
Dylan T. Hughes
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Attorneys for the Petitioner

Scott H. Kaminski
Ray, Winton & Kelley, PLLC
Charleston, West Virginia

Jill E. Hall
Justin M. Harrison
Grace E. Hurney
Laura A. Hoffman
Jackson Kelly PLLC
Charleston, West Virginia
Attorneys for the Respondents,
Under Armour, Inc., and
Under Armour Retail, Inc.

Mychal S. Schulz
Babst Calland

**Attorney for the Respondent,**
**Brian Boucher**

Charleston, West Virginia

Todd A. Mount
Shaffer & Shaffer, PLLC
Madison, West Virginia
Attorneys for Amicus Curiae,
Defense Trial Counsel of
West Virginia

**JUSTICE MOATS delivered the Opinion of the Court.**

**JUSTICE ALAN D. MOATS, sitting by temporary assignment.**

# SYLLABUS BY THE COURT

1.      "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*. . . ." Syllabus point 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

2.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3.      "[C]ourts are not to eliminate through judicial interpretation words that were purposely included . . . ." Syllabus point 11, in part, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

4.      "Even though a discharged at-will employee has no statutory claim for retaliatory discharge under *W. Va. Code*, 5-11-9(7)(C) [1992] of the West Virginia Human Rights Act because his or her former employer was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful

discriminatory practice were committed, as required by *W. Va. Code*, 5-11-3(d) [1994] [which is the definition of 'employer'], the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W. Va. Code*, 5-11-1, *et seq*." Syllabus point 8, *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997).

5.      An entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), may not be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016).

**Moats, Justice:**

The United States District Court for the Northern District of West Virginia has certified the following question to this Court, which seeks to clarify the application of the West Virginia Human Rights Act ("WVHRA") when the plaintiff's employing entity[1] does not meet the WVHRA definition of "employer":

> Whether an entity that does not meet the definition of "employer" in West Virginia Code § 5-11-3(d) is nonetheless subject to liability under West Virginia Code § 5-11-9(7) as a "person" defined in West Virginia Code § 5-11-3(a)?

We find the question posed is too broadly stated. Therefore, we exercise our authority to reformulate and more narrowly phrase the question:

> May an entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016)?

We answer this question in the negative.[2]

---

[1] We use the term "employing entity" for ease of reference. It simply refers to an entity that has employees, but does not meet the WVHRA definition of "employer."

[2] This Court would like to acknowledge the participation in this case of the Defense Trial Counsel of West Virginia, who filed an amicus curiae brief in support of the Under Armour respondents. We have considered the arguments presented by this amicus curiae in deciding this case.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner, Ms. Cynthia D. Pajak ("Ms. Pajak"), was hired by the respondents, Under Armour, Inc. and/or Under Armour Retail, Inc. (collectively "Under Armour"), in November 2012, to serve as director of Under Armour's East and Canada regions. She worked remotely from Bridgeport, West Virginia, and reported to respondent Brian Boucher ("Mr. Boucher"). She has alleged the following facts. In January and April of 2018, she received reports of several instances of inappropriate workplace conduct in the realm of sexual harassment from female Under Armour employees.[3] Ms. Pajak collected written statements describing the misconduct and provided them to Mr. Boucher, who minimized the misconduct and directed Ms. Pajak to "move on." A mid-year performance review Ms. Pajak received from Mr. Boucher on June 12, 2018, raised no concerns about her job performance; nevertheless, nine days later, and without consulting Under Armour's human resources department, Mr. Boucher raised concerns about Ms. Pajak's job performance and asked her to voluntarily leave her position. Mr. Boucher then placed Ms. Pajak on a sixty-day Performance Improvement Plan ("PIP") on September 10, 2018, instead of a ninety-day PIP as Under Armour typically allowed, and failed to provide

---

[3] Examples of the improper conduct provided by Ms. Pajak are that a district manager took off his shirt and pretended to do a striptease, the same manager posted a photo of himself in a Speedo posing for a body building competition on Under Armour's internal social media site, and another district manager inappropriately commented about a female colleague's appearance.

any guidance as to what areas of her performance required improvement. Additionally, and contrary to his representation that he would meet regularly with Ms. Pajak during the PIP period, Mr. Boucher met with Ms. Pajak only once, and she requested that meeting. Ms. Pajak was dismissed from her employment on December 10, 2018, ninety days after her PIP was initiated.

On July 16, 2019, Ms. Pajak filed a lawsuit against Under Armour and Mr. Boucher in the Circuit Court of Harrison County, West Virginia. She asserted claims for wrongful discharge under *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E. 2d 270 (1978); Negligent Hiring, Supervision, and Retention; Intentional Infliction of Emotional Distress or Tort of Outrage; and, pertinent to the instant certified question, violations of the WVHRA. In her WVHRA claim, Ms. Pajak has alleged that Under Armour placed her on a pretextual PIP and then discharged her as a result of her protected activity in violation of West Virginia Code § 5-11-9(7); therefore, she suffered retaliation, harassment, and discrimination based on sex due to her protected activity. Under Armour removed the case to the United States District Court for the Northern District of West Virginia and filed a motion for partial dismissal of Ms. Pajak's complaint. Under Armour sought, in relevant part, dismissal of Ms. Pajak's WVHRA claim on the ground that Ms. Pajak had failed to allege that Under Armour satisfied the numerosity portion of the WVHRA definition of "employer," under which Under Armour had to

employ "twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year."  W. Va. Code § 5-11-3(d) (eff. 1998).  The district court denied Under Armour's motion, and discovery proceeded.  Eventually, Under Armour filed a motion asking the district court to certify the following question to this Court:

> Whether an "employer" as defined in West Virginia Code Section 5-11-3(d) means one who employs twelve or more persons **working** within the state for twenty or more calendar weeks in the calendar year the discrimination allegedly took place or in the preceding calendar year[?]

The district court heard arguments on the motion, initially granted it, and ordered that the following two questions be certified:

> 1.    Whether an "employer" as defined in West Virginia Code § 5-11-3(d) means one who employs twelve or more persons working within the state for twenty or more calendar weeks in the calendar year the discrimination allegedly took place or in the preceding calendar year?
>
> 2.    Whether a corporate employer is a "person" as defined in West Virginia Code § 5-11-3(a), regardless of whether it is also an "employer" as defined in § 5-11-3(d)?

However, upon further consideration the district court determined that the plain language of the WVHRA mandates that an "employer" have at least twelve employees who perform their assigned tasks and responsibilities within the State of West Virginia.  Accordingly, the district court vacated, in part, its order granting Under Armour's

4

motion to certify and declined to certify the first question. Thereafter, by order entered on June 11, 2021, the district court certified only the following question to this Court:

> Whether an entity that does not meet the definition of "employer" in West Virginia Code § 5-11-3(d) is nonetheless subject to liability under West Virginia Code § 5-11-9(7) as a "person" defined in West Virginia Code § 5-11-3(a)?

We accepted the certified question and placed this matter on the docket for argument under Rule 20 of the West Virginia Rules of Appellate Procedure.

## II.

## STANDARD OF REVIEW

This Court's consideration of a certified question from a federal district court is plenary. "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998)." Syl. pt. 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017). Furthermore, to the extent that we must engage in statutory construction to answer the question that has been certified, our interpretation of the relevant statutory provisions likewise is plenary. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Our resolution of the certified question at issue will be guided by these standards.

5

# III.

# DISCUSSION

At the outset, we recognize our authority to reformulate the question herein certified.

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.* . . .

Syl. pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51-1A-4 (eff. 1996) ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."). In this case, we find the certified question is too broadly stated. Therefore, we reformulate and more narrowly phrase the question to be resolved as follows:

> May an entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016)?

The district court determined, for purposes of the underlying litigation, that Under Armour does not meet the definition of "employer" as set out in West Virginia Code § 5-11-3(d) and declined to certify a question to this Court addressing that issue. Accordingly, for purposes of this opinion, we accept the district court's determination as to Under Armour's

6

status as an "employer" under the WVHRA.[4]  Our task then is simply to determine, in the context of an employee/employing entity, whether the term "person" as used in West Virginia Code § 5-11-9(7) is intended by the Legislature to include an entity, such as Under Armour, that does not meet the WVHRA definition of "employer."

To answer this question, we must examine relevant provisions of the WVHRA.  In doing so, we are mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).  *See also* Syl. pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953) ("The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature.").  To this end, "[w]hen a statute is clear and unambiguous[,] and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute."  Syl. pt. 5, *State v. General Daniel Morgan Post*

---

[4] As noted in the facts set out above, the district court was presented with a motion to certify a question addressing the definition of "employer" under the WVHRA, and, specifically, whether that definition requires persons employed to perform their work within the State of West Virginia.  The district court ultimately declined to certify that question.  In the present action, Under Armour invites this Court to, under the guise of our authority to reformulate certified questions, address the very question the district court declined to certify.  Because the district court chose not to certify this particular question, we decline Under Armour's invitation.  Similarly, respondent Mr. Boucher asks this Court to consider a question that he proposed to the district court for certification to this Court. The district court also rejected Mr. Boucher's proposed question; therefore, we will not address it in this opinion.

7

*No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Conversely, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

Furthermore, when endeavoring to interpret the WVHRA, it is important to note that the Legislature has explicitly directed that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." W. Va. Code § 5-11-15 (eff. 1967). *See also Skaff v. W. Va. Hum. Rts. Comm'n*, 191 W. Va. 161, 162, 444 S.E.2d 39, 40 (1994) ("The West Virginia Human Rights Act shall be liberally construed to accomplish its objective and purpose." (quotations and citations omitted)); Syl. pt. 1, in part, *Paxton v. Crabtree*, 184 W. Va. 237, 400 S.E.2d 245 (1990) (same). The objectives and purposes underlying the WVHRA are specifically set out therein, in relevant part, as follows:

> It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment . . . . Equal opportunity in the area[] of employment . . . is hereby declared to be a human right or civil right of all persons without regard to . . . sex . . . .
>
> The denial of these rights to properly qualified persons by reason of . . . sex . . . is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va. Code § 5-11-2 (eff. 1998). We do note, however, that when addressing the meaning of a given statute, "legislative intent is the dominant consideration. [Where] that intent is

8

expressed by clear and unambiguous language . . . it is . . . not necessary for us to rely on canons of statutory construction calling for liberal construction of remedial legislation to effectuate legislative intent." *U.S. Life Credit Corp. v. Wilson*, 171 W. Va. 538, 541, 301 S.E.2d 169, 172 (1982). *Cf. Davenport v. Gatson*, 192 W. Va. 117, 119, 451 S.E.2d 57, 59 (1994) ("While we recognized that unemployment compensation statutes should be liberally construed in favor of the claimant . . . we are not at liberty to ignore the plain language of a statute." (citation and footnote omitted)); *Adkins v. Gatson,* 192 W. Va. 561, 564-65, 453 S.E.2d 395, 398-99 (1994) ("Our decisions have been constant that unemployment compensation statutes should be liberally construed in favor of the claimant . . . . This 'liberality' rule is not to be utilized when its application would require us to ignore the plain language of the statute." (quotations and citations omitted)).

With the foregoing principles in mind, we begin our analysis by examining the relevant statute.

> It has been emphasized repeatedly that "'[t]he starting point in every case involving construction of a statute is the language itself.'" *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, [584], 115 S. Ct. 1061, 1074, 131 L. Ed. 2d 1, 21 (1995) (Thomas, J., dissenting), *quoting Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S. Ct. 2297, 2301, 85 L. Ed. 2d 692, 697 (1985).

9

*Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 135 n.9, 464 S.E.2d 771, 777 n.9 (1995).

According to West Virginia Code § 5-11-9(7), the portion of the WVHRA that Ms. Pajak seeks to apply to Under Armour:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the State of West Virginia or its agencies or political subdivisions:
>
> . . . .
>
> (7) For *any person, employer*, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:
>
> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;
>
> (B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or
>
> (C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

10

W. Va. Code § 5-11-9(7) (eff. 2016) (emphasis added). Notably, paragraph (7) refers to various entities, including any "person" or "employer." The terms "person" and "employer" are defined in the WVHRA as follows:

> (a) The term "person" means one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons;
>
> . . . .
>
> (d) The term "employer" means the state, or any political subdivision thereof, and *any person* employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year: Provided, That such terms shall not be taken, understood or construed to include a private club;

W. Va. Code § 5-11-3 (eff. 1998) (emphasis added).

Placing emphasis on the liberal interpretation to be afforded the WVHRA, Ms. Pajak first contends that Under Armour qualifies as a "person" under the WVHRA definition of that term because it is a corporation, and, therefore, it is subject to liability under West Virginia Code § 5-11-9(7) as a "person" regardless of whether it is an "employer" under the WVHRA. She observes that § 5-11-9(7) prohibits specific conduct, including retaliation, by *any* person, employer, etcetera, and reasons that the use of the term "any" signifies that § 5-11-9(7) applies to a substantially broader set of potential defendants

11

than other provisions of § 5-11-9 that proscribe discriminatory practices under the WVHRA. Based upon this reasoning, Ms. Pajak concludes that the Legislature did not intend there to be any limitations on the term "person" as used in § 5-11-9(7). Under Armour argues that an entity that is specifically exempt from liability under the WVHRA, due to its failure to meet the requisite criteria to be an "employer" as therein defined, may not be a "person" that is subject to a claim for violating West Virginia Code § 5-11-9(7), particularly where that claim is asserted by the entity's own employee. We find Under Armour's position is in accord with the Legislative intent with respect to the definition of "employer" and its application in the context of West Virginia Code § 5-11-9(7).

We first observe that the Legislature gave the term "employer" a specific definition when used in the WVHRA. That definition includes "any person," but only when such person meets the remaining criteria set out in the definition, i.e., "employing twelve or more persons within the state" during the requisite period of time and not being a private club. W. Va. Code § 5-11-3(d). Accordingly, the plain language of the definition of "employer" itself excludes a "person" when that person does not meet the remaining elements of the definition, but necessarily includes "any person" that does meet those elements. This view of the term "employer" also is consistent with this Court's prior recognition that "[t]he term 'person,' as defined and utilized within the context of the West Virginia Human Rights Act, includes . . . employers," Syl. pt. 3, in part, *Holstein v.*

12

*Norandex, Inc.*, 194 W. Va. 727, 461 S.E.2d 473 (1995) (referring to "employers" as defined in the WVHRA). To find otherwise would ignore a plaintiff's status as an employee and allow such an employee to circumvent the Legislature's plain intent that only employing entities who meet the WVHRA definition of "employer" are subject to liability thereunder. *See Kalany v. Campbell*, 220 W. Va. 50, 57, 640 S.E.2d 113, 121 (2006) (observing a rational basis for prohibiting discriminatory conduct "in a manner that does not apply to employers whose business interests do not require the use of more than a minimal number of employees.").

Ms. Pajak relies on *Holstein* and contends that this Court previously has held that the term "person" as defined in West Virginia Code § 5-11-3(a) includes both employees and employers, and has recognized that claims under § 5-11-9(7) may be brought against any "person." However, as Under Armour correctly observes, *Holstein* does not support Ms. Pajak's position that when a plaintiff's employing entity does not meet the WVHRA definition of "employer," it may nevertheless be considered a "person" for purposes of West Virginia Code § 5-11-9(7).

The issue on appeal in *Holstein* was whether a supervisor could be liable for a violation of § 5-11-9(7)(A), under which it is generally unlawful

(7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:

(A) . . . aid, abet, incite, compel or coerce *any person* to engage in any of the unlawful discriminatory practices defined in this section[.]

W. Va. Code § 5-11-9(7)(A) (emphasis added). The plaintiff, Mr. Holstein, sued his employer, Norandex, for age discrimination, and also sued his supervisor, Mr. Michael Counts, for retaliatory discharge in violation of West Virginia Code § 55-11-9(7)(A), asserting that Mr. Counts aided and abetted Norandex in an act of unlawful discrimination. Mr. Counts filed a motion to dismiss. The circuit court granted the motion, reasoning, in relevant part, that (1) Mr. Counts was an employee who could not be held liable under West Virginia Code § 5-11-9(7); (2) Norandex was an "employer" under the WVHRA and, therefore, was excluded from the definition of a "person" as used in the WVHRA; and (3) the allegation that Mr. Counts, as an employee of Norandex, aided and abetted Norandex in discriminatory conduct did not meet the statutorily mandated element that Mr. Counts must have aided and abetted a "person." *Holstein*, 194 W. Va. at 729, 461 S.E.2d at 475. On appeal, Norandex argued in favor of the circuit court's rulings and argued that "the failure to include the terms 'employee' and 'employer' within the definition of 'person' in W. Va. Code § 5-11-3(a) demonstrat[ed] a legislative intent to exclude employees as potential defendants and to exclude employers as potential recipients of aid and abetment

14

in actions brought under the HRA." *Holstein*, 194 W. Va. at 730, 461 S.E.2d at 476. This Court rejected the circuit court's interpretation of the term "person" and held that

> [t]he term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation.

Syl. pt. 3, *id*. *See also* Syl. pt. 9, *Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996) (holding that "[t]he term 'person,' as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers," and concluding that the West Virginia Regional Jail and Correctional Facility Authority, which met the WVHRA definition of an "employer," but did not employ the plaintiff, was a "person" who could be a defendant under West Virginia Code § 5-11-9(7)). Notably, in both *Holstein* and *Conrad* the employing entity was an "employer" under the WVHRA; therefore, we do not find these opinions to be instructive in answering the certified question with which we are herein presented, which specifically addresses an entity that does not meet the WVHRA definition of "employer."

Moreover, this Court has previously indicated that the status of a plaintiff as the defendant's employee required that the defendant meet the WVHRA definition of "employer" in order to be held liable to the employee for a violation of the WVHRA. In

15

*Woodall v. International Brotherhood of Electrical Workers, Local 596*, this Court observed a "labor organization's dual role under the Human Rights Act as an employer and a labor organization." *Woodall*, 192 W. Va. 673, 675, 453 S.E.2d 656, 658 (1994). The plaintiff in *Woodall* was an employee of the labor organization but was not a member. *Id.* at 674, 453 S.E.2d at 657. The labor organization did not meet the WVHRA definition of "employer." *Id.* at 677, 453 S.E.2d at 660. Thus, the Court was faced with the question of

> whether an employee of a labor organization, who is not a member of that labor organization, may file an action under the Human Rights Act against that labor organization pursuant to *W. Va. Code*, 5-11-9(c) [now 5-11-9(3)] even though the labor organization does not meet the definition of employer pursuant to W. Va. Code, 5-11-3(d) . . . .

*Woodall*, 192 W. Va. at 675, 453 S.E.2d at 658. The Court found that West Virginia Code § 5-11-9(c), which is now found at § 5-11-9(3), applies only to a labor organization's representative capacity. *See* Syl. pt. 1, *Woodall*, 192 W. Va. 673, 453 S.E.2d 656. Thus, even though the labor organization was an employing entity and could also be held liable in its representative capacity for certain violations of the WVHRA, the Court held that "a labor organization is liable for unlawful discriminatory practices in *its capacity as an employer* only if it meets the definition of employer set forth in *W. Va. Code*, 5-11-3(d) . . . ." Syl. pt. 1, in part, *Woodall*, 192 W. Va. 673, 453 S.E.2d 656 (emphasis added).

Turning next to West Virginia Code § 5-11-9(7), we note that it uses the disjunctive term "or" in listing those who may be liable for engaging in the conduct

prohibited therein, i.e., "any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman *or* financial institution." W. Va. Code § 5-11-9(7) (emphasis added). The disjunctive term "or" indicates alternatives. *See Brickstreet Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 240 W. Va. 414, 423, 813 S.E.2d 67, 76 (2018) (stating that use of "or" in statute "plainly commands a choice of either one or the other"); *State v. Wilkerson*, 230 W. Va. 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice."); *Carper v. Kanawha Banking & Tr. Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."). Thus, use of "or" in West Virginia Code § 5-11-9(7) to refer to "any person" *or* "employer" indicates they are separate choices, and, therefore, an "employer" is not the same as "any person."

Furthermore, because the Legislature used both the term "person" and the term "employer," we must give meaning to them both. "'[T]he Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning,' *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979)[.]" *Stone v. United Eng'g, a Div. of Wean, Inc.*, 197 W. Va. 347, 355, 475 S.E.2d 439, 447 (1996). *See also Bullman*, 195 W. Va. at 133, 464 S.E.2d at 775 ("[E]very word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly."). However, broadly construing the term "person" in West Virginia Code § 5-11-9(7)

17

to include a plaintiff's employing entity that does not meet the WVHRA definition of the term "employer" would render the limitations on the term "employer" meaningless for purposes of § 5-11-9(7). The cannons of statutory construction prohibit such a result. "[C]ourts are not to eliminate through judicial interpretation words that were purposely included . . . ." Syl. pt. 11, in part, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013). Instead, by including the word "employer" in § 5-11-9(7), the Legislature has plainly demonstrated its intent that an entity would be liable to its own employee for a violation thereof only when the entity meets the WVHRA definition of the term "employer." Given that the Legislature has clearly expressed its intent that an employing entity meet the WVHRA definition of the term "employer" to be held liable to its own employee for a violation of West Virginia Code § 5-11-9(7), we need not resort to a liberal construction of the WVHRA in this regard. *See U.S. Life Credit Corp.*, 171 W. Va. at 541, 301 S.E.2d at 172 (recognizing that where legislative "intent is expressed by clear and unambiguous language[,] . . . it is . . . not necessary for us to rely on canons of statutory construction calling for liberal construction of remedial legislation to effectuate legislative intent").

Finally, in *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997), this Court addressed a question very similar to the one herein raised. The *Williamson* Court was presented with several certified questions, one of which addressed the WVHRA

18

definition of "employer." Similar to Ms. Pajak, the plaintiff in *Williamson* sought to bring a statutory claim for retaliatory discharge against her own employing entity pursuant to West Virginia Code § 5-11-9(7)(C) [1992]. *Williamson* was decided under an earlier version of the WVHRA. At that time, the definition of "employer" did not set out the specific timeframe during which an employing entity was required to employ twelve or more persons within the State; therefore, the Court had to construe the provision to determine whether Ms. Williamson's employing entity qualified as an "employer," and, if not, whether Ms. Williamson could maintain a common law claim for retaliatory discharge against her former employing entity. Although the Court did not expressly analyze the specific question now before the Court, i.e., whether an entity that does not meet the WVHRA definition of "employer" may meet the WVHRA definition of "person," it nevertheless resolved that question in the negative when it held that

> Even though a discharged at-will employee has no statutory claim for retaliatory discharge under *W. Va. Code*, 5-11-9(7)(C) [1992] of the West Virginia Human Rights Act *because his or her former employer was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed*, as required by *W. Va. Code*, 5-11-3(d) [1994] [which is the definition of employer], the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W. Va. Code*, 5-11-1, *et seq*.

19

Syl. pt. 8, *Williamson*, 200 W. Va. 421, 490 S.E.2d 23 (emphasis added). This Court similarly has found that an employing entity that is not an "employer" under the WVHRA cannot be a "person" for purposes of imposing attorney's fees and costs under the Act. *See* Syl. pt. 2, *Kalany*, 220 W. Va. 50, 640 S.E.2d 113 ("An employer who does not come within the protections of the West Virginia Human Rights Act, West Virginia Code §[§] 5-11-1 to -21 (Repl. Vol. 2006), based on the minimal number of employees he hires, cannot be deemed a statutory "person" for purposes of relying on the Act's authority to make an award of fees and costs at the discretion of the trial court."). The *Kalany* Court also observed the rational policy basis for excluding small businesses from the WVHRA, commenting that "[t]hose legitimate policy reasons include the desire to encourage small businesses and to protect such small entrepreneurs from the associated costs of complying with discrimination laws and defending against claims brought under such legislation." *Id.* at 58 n.14, 640 S.E.2d at 121 n.14.

Based upon the foregoing analysis of the specific provisions at issue and considering prior opinions by this Court, we now hold that an entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), may not be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016).

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we answer the question certified by the United States District Court for the Northern District of West Virginia, as reformulated, in the negative: An entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), may not be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016).

Certified Question Answered.